UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSSELL PERCY DUNHAM (#279689),

|  | CASE NO. 4:13-CV-10001 |
|---|---|
| Plaintiff, | JUDGE TERRENCE G. BERG |
|  | MAGISTRATE JUDGE PAUL J. KOMIVES |

v.

PARVEEN A. MALIK, JOSHUA A. BUSKIRK,
HARESH PANDYA, KANWAR RANA,
ADAM EDELMAN, EDDIE JENKINS,
SYLVIA MCQUEEN, RONALD STUKEY,
JULIE VANSETTERS, KEVIN CORNING,
JOHN STEELE, HARRIET SQUIER,
MICHAEL SARVER, JEFFREY C. STIEVE and
MARY JACKSON-HAMMOND,
as personal representative for the
estate of Artee Hammond,

Defendants,
_____/

## REPORT AND RECOMMENDATION REGARDING
## THE CORIZON DEFENDANTS' MOTION TO DISMISS (Doc. Ent. 18)

Table of Contents

I.   RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   Denials for Specialty Service for Dunham during 2009 and 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   Dunham's Attempts in 2012 to Obtain Health Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.   Plaintiff's January 1, 2013 Original Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     D.   The Corizon Defendants' April 3, 2013 motion to dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     E.   Plaintiff's August 29, 2013 First Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     F.   The Court Should Deny the Corizon Defendants' Motion without Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1.   The instant motion is moot to the extent it seeks dismissal of Counts II and III against the Corizon defendants
               (see Doc. Ent. 18 at 2 ¶¶ 2, 3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          2.   It is not clear from the face of the complaint whether portions of Count I are barred by the applicable statute of
               limitations (see Doc. Ent. 18 at 2 ¶ 4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          3.   Plaintiff should file a more definite statement in the form of a second amended complaint. . . . . . . . . . . . . . . 13
          4.   Incidentally, plaintiff exhausted his administrative remedies with respect to MDOC Grievance Identifier RGC-
               12-07-1071-12z prior to filing his January 1, 2013 complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**I.      RECOMMENDATION:** The Court should deny the Corizon defendants' April 3, 2013

Fed. R. Civ. P. 12(b)(6) motion to dismiss (Doc. Ent. 18) without prejudice.  Specifically, the

Court should **(a)** deem the motion moot to the extent it seeks dismissal of Counts II and III

against the Corizon defendants (*see* Doc. Ent. 18 at 2 ¶¶ 2, 3); **(b)** deny the motion without

prejudice to the extent it seeks dismissal of portions of Count I (*see* Doc. Ent. 18 at 2 ¶ 4); and

**(c)** require plaintiff to file a more definite statement in the form of a second amended complaint.


**II.      REPORT:**

**A.      Denials for Specialty Service for Dunham during 2009 and 2010**

**1.**      On May 2, 2008, Annette D. Miller, R.N., completed Russell P. Dunham's MDOC

intake/receiving form at the Charles Egeler Reception & Guidance Center (RGC) in Jackson,

Michigan.  It appears that Dunham was to be located at the Bellamy Creek Correctional Facility

(IBC) in Ionia, Michigan.  Doc. Ent. 42-2 at 1-2.

On October 9, 2008, while Dunham was incarcerated at the Saginaw Correctional Facility

(SRF) in Freeland, Michigan, he was examined by K. Nimr Ikram, D.O. of the Duane L. Waters

Health Center in Jackson, Michigan.  Ikram diagnosed Dunham with degenerative joint disease of

the right knee and malunion of the distal femur to the right leg.  Ikram recommended a referral to

traumatologist Dr. Michaels to follow-up.  Doc. Ent. 42-2 at 3-5; *see also* Doc. Ent. 42-2 at 6

(MDOC Progress Notes).

Ikram's CMS Specialty Consult Report was reviewed by Joseph Burtch on October 13,

2008.  That same day, Burtch of SRF initiated a consultation request for an orthopaedic

evaluation.  *See* Doc. Ent. 42-2 at 5, 7-8.  However, the October 24, 2008 CMS/UM response

states that, per Dr. Squier, the criteria were not met and the MP should continue working with the Pain Management Committee (PMC) to maximize medical pain management.  Doc. Ent. 42-2 at 8.

Walter F. Finan, M.D. appealed on or about December 4, 2008.  *See* Doc. Ent. 42-2 at 9-10.

**2.**     On April 9, 2009, while incarcerated at SRF, Dunham was seen by Michael P. Swords, D.O., who diagnosed posttraumatic arthritis of the right knee, concluded that Dunham "will require plate removal and then a knee replacement[,]" and recommended follow up with an orthopedic doctor "who performs knee replacement."  Doc. Ent. 42-3 at 1-2.

On April 10, 2009, Parveen A. Malik, M.D., reviewed Sword's MDOC Prisoner Health Services Authorization Letter (Doc. Ent. 42-3 at 2), performed a physical exam of plaintiff (Doc. Ent. 42-3 at 5) and initiated a consultation request for "Orthopedics–Rt Knee Replacement[,]" (Doc. Ent. 42-3 at 3-4).  *However, the April 29, 2009 / May 4, 2009 PHS 407 Response Form recommended an alternative treatment plan - conservative treatment.  Doc. Ent. 42-3 at 6.*

**3.**     In response to Malik's August 3, 2009 request for ortho, *the August 7, 2009 PHS 407 Response Form, signed by H. Squier, M.D., noted, "[s]ince [patient] is able to meet ADL[s] [activities of daily living] & since this is a pre-existing condition, he does not meet medical necessity criteria for total knee replacement.  Please continue to have PMC manage symptomatically[.]" Doc. Ent. 42-3 at 7.*

Malik's August 10, 2009 MDOC progress notes acknowledge that plaintiff's second request for knee replacement was not approved by PHS.  The notes also describe his (Malik's) attempt to talk to Squier and phone conversation with Edelman.  Doc. Ent. 42-2 at 11.  On August

3

12, 2009, Malik completed a Pain Management Committee (PMC) re-evaluation request regarding surgery and pain management.  Doc. Ent. 42-2 at 12.  On August 28, 2009, Malik spoke with Dr. McQueen about Dunham's knee replacement surgery reconsideration.  Doc. Ent. 42-2 at 13.

**4.**      *By an MDOC Memorandum dated September 29, 2009, Michael Sarver, M.D. informed Finan at SRF that the appeal of specialty service (orthopedic evaluation) non-approval was reviewed by the Medical Services Advisory Committee (MSAC), and the MSAC decided to uphold the non-approval*, commenting that Dunham's injury was "MVI related" and that Dunham was "too young to have initial knee replacement."  The MSAC "recommend[ed] physical therapy/conservative treatment[.]" Doc. Ent. 42-3 at 8.

*By an MDOC Memorandum dated December 15, 2009, Jeffrey C. Stieve, M.D. informed Malik at SRF that the appeal of specialty service (orthopedic evaluation) non-approval was reviewed by the MSAC, and the MSAC decided to uphold the non-approval.*  The memorandum noted that the MSAC members present for review were Stieve, Kevin Corning, Haresh Pandya, Kanwar Rana, Adam Edelman, Eddie Jenkins, Sylvia McQueen, John Steele, Ronald Stukey and Artee Hammond.  Doc. Ent. 42-3 at 9.

**5.**      On January 25, 2010, Joshua A. Buskirk, P.A. made the following progress notes:

> Dr[.] Stukey explained to [Dunham] that current medical data does not support having a knee replacement.  Dr[.] Stukey explained to him that there is no current medical evidence that would indicate that a knee replacement would improve his functionality.  There are many risks of having the procedure done [due to] the extreme nature of his injury.  He explained the medical committee's process.

> Dr[.] Stukey explained that we will continue to treat his pain and recommended possibly trying a physical therapy visit and a knee brace.  [Dunham] was not in agreement with this medical advice.

4

Doc. Ent. 42-2 at 14.

Approximately two months later, *by an MDOC Memorandum dated March 30, 2010, Stieve informed Buskirk at SRF that the appeal of specialty service (knee replacement surgery right knee) non-approval was reviewed by the MSAC, and the MSAC decided to uphold the non-approval*.  The memorandum noted that the MSAC members present for review were Stieve, Pandya, Rana, Edelman, Jenkins, McQueen, Stukey and Julie VanSetters.  Doc. Ent. 42-3 at 10.

## B.    Dunham's Attempts in 2012 to Obtain Health Information

Dunham attests that, "[o]nly after [he] found counsel did [he] find out that this [Medical Services Advisory] Committee [MSAC] existed and then sought information as to its members." Doc. Ent. 42-4 ¶ 3, Doc. Ent. 47 ¶ 3.  On July 16, 2012, while located at 4000 Cooper Street, Jackson, Michigan 49201, Dunham completed an MDOC "Patient's Authorization for Disclosure of Health Information," seemingly for the period of September 2009 through November 11, 2011. Doc. Ent. 42-5 (CHJ-121).  The response, dated July 18, 2012, noted that "[n]ames of the medical services advisory committee cannot be provided because it is not a part of the medical file. Release of Information only provides copies of medical information within the medical file." Doc. Ent. 42-6 (CHJ-268).

On July 18, 2012, while incarcerated at RGC, Dunham completed an MDOC Prisoner/Parolee Grievance Form claiming that he "requested disclosure of medical information from [the MDOC's] Bureau of Health Care Services (Form CHJ-121)[.]" Specifically, Dunham stated:

> "I'm being denied the names of Medical Services Advisory Committee [members]
> and medical staff who denied [him] recommended surger[ies] on 9/09, 12/09, and
> 2011[.]" U of M denied recommend[a]tions for surgery.  After requesting

disclosure of this medical information.  (Form CHJ-121)[.] *See* Attached Response
to Request for Health Record Information (CHJ-268)[.]

The Grievance was received at Step I on July 23, 2012 and assigned Grievance Identifier RGC-

2012-07-1071-12Z.  The Step I response, dated August 14, 2012 and signed by respondent

Brenda Bowen and reviewer Liz Solomon, states:

The name of the physician who approves or disapproves the 407 is toward the
bottom of the 407 page.  Release of Information staff will research if there are any
denied 407 requests for surgery and process your CHJ-121 according to policy.

Doc. Ent. 42-7 at 1-2.

On or about August 28, 2012, Dunham submitted a Step II grievance appeal form, wherein

he explained that he needed "all the names of MSAC members who denied all [his] surgery

consult requests for surgery to right knee."  Specifically, Dunham sought "disclosure of the

MSAC members names who made these decisions as a committee on 9/09 and [through] 2011."

The Step II response is dated September 6, 2012 and signed by respondent Nathan Neusbaum.

Doc. Ent. 42-7 at 3.

According to handwritten notes, this grievance was in Step III as of September 18, 2012.

*See* Doc. Ent. 42-7 at 4.  Also, Dunham declares under penalty of perjury that he "submitted a

step III appeal[,]" but "never received a response to [his] step III grievance [until] April 17,

2013."  Doc. Ent. 42-4 ¶¶ 6-7, Doc. Ent. 47 ¶¶ 6-7; *see also* Doc. Ent. 42 at 4.

It appears that the Step III grievance appeal was received by the MDOC on September 19,

2012, the grievance was deemed resolved on March 14-15, 2013, and the decision was mailed to

Dunham on March 20, 2013.  Doc. Ent. 46-1 at 1-2.[1]

---

[1]Mandy Osbun, who describes herself as Dunham's girlfriend, attests to an April 16, 2013
telephone conversation she had with Kelly Melli of the MDOC, during which Melli informed Osbun

**C.      Plaintiff's January 1, 2013 Original Complaint**

Dunham is currently incarcerated at the MDOC's Kinross Correctional Facility (KCF) in

Michigan's upper peninsula.  On January 1, 2013, Dunham filed this case, via counsel, against

fifteen (15) named defendants (Malik, Buskirk, Stieve, Pandya, Rana, Edelman, Jenkins,

McQueen, Stukey, VanSetters, Corning, Steele, Hammond, Squier and Sarver), as well as several

John Doe defendants, who are described as members of the MSAC.  Doc. Ent. 1 ¶¶ 2-17.

The facts underlying plaintiff's complaint concern knee replacement.  Doc. Ent. 1 ¶¶ 23-

53.  Plaintiff sets forth three (3) causes of action: (I) deliberate indifference to a serious medical

need in violation of the Eighth Amendment (¶¶ 54-57) against the named defendants; (II)

violation of 42 U.S.C. § 12132 of the Americans with Disabilities Act (ADA) (¶¶ 58-62) by

Stieve; and (III) violation of 29 U.S.C. § 794(a) of the Rehabilitation Act by Stieve (Doc. Ent. 1

¶¶ 63-68).

On April 9, 2013, Judge Berg entered a stipulated order of dismissal as to Count II and

Count III against the Corizon defendants only.  Doc. Ent. 29.[2]

**D.      The Corizon Defendants' April 3, 2013 motion to dismiss**

Judge Berg has referred this case to me for all pretrial proceedings.  Doc. Ent. 35.

Currently before the Court is Corizon defendants Squier, Jenkins, McQueen, Steele and Buskirk's

April 3, 2013 Fed. R. Civ. P. 12(b)(6) motion (Doc. Ent. 18) to dismiss portions of plaintiff's

complaint.  Specifically, these defendants argue that "plaintiff failed to state a claim against

---

that "the MDOC sent a copy of the step III decision to Russell Dunham on March 14, 2013."  *See*
Doc. Ent. 42-8.

[2]This April 9, 2013 order specifically mentions Corizon defendants Squier, Jenkins,
McQueen, Steele, Buskirk, Malik and Edelman.  Doc. Ent. 29 at 2.  Corizon defendant Stuky did
not appear in this case until June 19, 2013 (*see* Doc. Entries 55-59).

[them] upon which relief may be granted as to counts II (Americans With Disabilities Act) and III

(Rehabilitation Act).  Furthermore, these defendants argue that "portions of plaintiff's claims are

barred by the applicable statutes of limitations."  Doc. Ent. 18 at 7.  In other words, these

defendants argue that "Counts II and III of the complaint fail to state a claim against the Corizon

entities[,]" and "[t]he Corizon defendants are entitled to dismissal of plaintiff's claims prior to

January 1, 2010[.]"  Doc. Ent. 18 at 10-11.

On April 8, 2013, Corizon defendants Malik and Edelman filed a concurrence (Doc. Ent.

23) with the motion to dismiss (Doc. Ent. 18).  On June 19, 2013, Corizon defendant Stukey filed

a concurrence (Doc. Ent. 57) with the motion to dismiss (Doc. Ent. 18).[3]

Plaintiff filed a response on May 9, 2013.  Doc. Ent. 42.[4]  Corizon defendants Squier,

Jenkins, McQueen, Steele and Buskirk filed a reply on May 10, 2013.  Doc. Ent. 43.  Plaintiff

filed a sur-reply on May 29, 2013.  Doc. Ent. 46.[5]  Corizon defendants Edelman, Malik, Squier,

Jenkins, McQueen, Steele and Buskirk filed a response on May 30, 2013.  Doc. Ent. 48.

## E.    Plaintiff's August 29, 2013 First Amended Complaint

On August 29, 2013, Dunham filed a first amended complaint against the same

defendants, with the exception that Hammond was replaced by Jackson-Hammond, as the

---

[3]Throughout this report and recommendation, "the Corizon defendants" will be used to refer to the moving parties Squier, Jenkins, McQueen, Steele and Buskirk, as well as the concurring parties Malik, Edelman and Stukey.

[4]Plaintiff filed a motion (Doc. Ent. 34) to extend time to file a response to defendants' motion to dismiss (Doc. Ent. 18); a response was filed (Doc. Ent. 37); and the response deadline was set for May 11, 2013 (Doc. Ent. 40).

[5]Plaintiff filed a motion (Doc. Ent. 45) to file a sur-response to the Corizon defendants' reply brief (Doc. Ent. 43); on June 3, 2013, I entered an order (Doc. Ent. 51) which, in part, granted plaintiff's May 29, 2013 motion (Doc. Ent. 45).

personal representative of Hammond. Doc. Ent. 71 ¶¶ 2-17. The causes of action remain the same. Doc. Ent. 71 ¶¶ 54-68. Plaintiff seeks declaratory relief, compensatory and punitive damages, and an award of attorney fees and costs. Doc. Ent. 71 at 10-11 ¶¶ a-e.

On November 15, 2013, the Court entered a stipulated order (Doc. Ent. 91) dismissing all claims against Corizon defendants Buskirk and Malik. Later, on December 5, 2013, a stipulated order (Doc. Ent. 94) dismissing claims against MDOC defendant Rana was entered.

Thus, only twelve (12) of the original fifteen (15) named defendants remain.

**F.    The Court Should Deny the Corizon Defendants' Motion without Prejudice.**

**1.    The instant motion is moot to the extent it seeks dismissal of Counts II and III against the Corizon defendants (*see* Doc. Ent. 18 at 2 ¶¶ 2, 3).**

The instant motion was filed by Corizon defendants Squier, Jenkins, McQueen, Steele and Buskirk (Doc. Ent. 18), and related notices of concurrence have been filed by Corizon defendants Edelman, Malik and Stukey (Doc. Entries 23, 57). As noted above, on April 9, 2013, Judge Berg entered a stipulated order of dismissal as to Count II and Count III against the Corizon defendants only. Doc. Ent. 29.

Thus, for purposes of the Corizon defendants' April 3, 2013 motion to dismiss (Doc. Ent. 18), the Court need only address Count I of the first amended complaint, which alleges deliberate indifference to plaintiff's serious medical need(s). *See* Doc. Ent. 71 ¶¶ 54-57.

**2.    It is not clear from the face of the complaint whether portions of Count I are barred by the applicable statute of limitations (*see* Doc. Ent. 18 at 2 ¶ 4).**

**a.**    "[S]ection 1983 claims [are] best characterized as tort actions for the recovery of damages for personal injuries and federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of*

9

*Whitehall*, 344 F.3d 550, 553 (6ᵗʰ Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)). "[T]he appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims." *Drake v. City of Detroit, Michigan*, 266 Fed.Appx. 444, 448 (6ᵗʰ Cir. 2008) (citing Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir.2004)).

"Under federal law as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6ᵗʰ Cir. 1996) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir.1991)). "Stated differently, '[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.'" *Cooey v. Strickland*, 479 F.3d 412, 416 (6ᵗʰ Cir. 2007) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir.2003)). "We must therefore look at when the harm in question occurred, guided by the principle that '[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Cooey*, 479 F.3d at 416 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6ᵗʰ Cir. 1984)). *See also LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1107 (6ᵗʰ Cir. 1995).[6]

**b.**     By their April 3, 2013 motion, the Corizon defendants maintain that they "are entitled to dismissal of plaintiff's claims prior to January 1, 2010[.]" In other words, they contend, "Plaintiff

---

[6]*See also Ruff v. Runyon*, 258 F.3d 498, 501 (6ᵗʰ Cir. 2001) ("'This inquiry focuses on the harm incurred, rather than the plaintiff's knowledge of the underlying facts which gave rise to the harm.'") (quoting *Friedman v. Estate of Presser*, 929 F.2d 1151 (6ᵗʰ Cir. 1991) (citing *Shannon v. Recording Industry Ass'n of America*, 661 F.Supp. 205, 210 (S.D. Ohio 1987))).

10

cannot state any valid claim for events that occurred more than three years prior to the filing of his original Complaint on January 1, 2013." Doc. Ent. 18 at 11.

c.       In his May 9, 2013 response, plaintiff makes several arguments, such as **(a)** "the statute of limitation for Dunham was tolled retroactively to April 29, 2009, and, therefore, the filing of the complaint on January 1, 2013, was timely[,]" Doc. Ent. 42 at 6-9; **(b)** "Dunham's complaint does not establish Corizon defendants' statute of limitations defense so as to bar any portion of Dunham's claim because the date of accrual and amount of tolling to apply is not apparent from the face of the complaint[,]" Doc. Ent. 42 at 9-12; and **(c)** "MDOC made the grievance process 'unavailable' to Dunham by not informing him that the recommended knee replacement surgery was denied by staff of MSAC[,]" Doc. Ent. 42 at 12-15.

d.       **Here, the Court should deny defendants' April 3, 2013 motion without prejudice to the extent it seeks dismissal of portions of plaintiff's 42 U.S.C. § 1983 claim as barred by the statute of limitations (*see* Doc. Ent. 18 at 2 ¶ 4).**  First, as discussed in the following section, the dates of the decisions being challenged are not clear from the face of the first amended complaint. *See*, *i.e.*, Doc. Ent. 71 ¶ 41.  Thus, the Court is without important data to determine when the statute of limitations accrued or began to run as to plaintiff's claims.

To be sure, it is plaintiff's position that the statute of limitations began to run on April 29, 2009 - the date of what seems to have been the initial denial (Doc. Ent. 42-3 at 6).  *See* Doc. Ent. 42 at 2, 3, 6, 8 and 9.  Unfortunately, the Corizon defendants' motion does not provide a robust statute of limitations argument with regard to plaintiff's 42 U.S.C. § 1983 Eighth Amendment claim; instead it simply argues that the Corizon defendants are entitled to dismissal of plaintiff's claims which occurred more than three years before this case was filed on January 1, 2013.  *See*

11

Doc. Ent. 18 at 11.  Moreover, neither the Corizon defendants' May 10, 2013 reply (Doc. Ent. 43) nor their May 30, 2013 filing (Doc. Ent. 48) addresses when the statue of limitations accrued or began to run.

Second, the lack of clarity in plaintiff's claims also means the Court is without important data to analyze whether the statute of limitations was tolled while plaintiff was engaged in the administrative grievance process.  As plaintiff points out, "[t]he statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies." *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir.2000)).  Therefore, until plaintiff's claims and administrative matters taken with respect to those claims are clarified, the Court is not in a position to determine for what length of time, if any, the statute of limitations was tolled as to those claims.

To be sure, the parties address tolling to a certain degree.  For example, plaintiff responds that "the statute of limitation for Dunham was tolled retroactively to April 29, 2009," Doc. Ent. 42 at 6-9; and "the date of accrual and amount of tolling to apply [are] not apparent from the face of the complaint[,]" Doc. Ent. 42 at 9-12.  On the other hand, the Corizon defendants' May 10, 2013 reply in part, "Plaintiff relies upon Grievance No. RGC-12-07-1071-12Z as the grievance that tolled the statute of limitations; however, Plaintiff filed his Complaint before the completion of Step III of the MDOC grievance process had been completed."  Doc. Ent. 43 at 4. Furthermore, in their May 30, 2013 response, the Corizon defendants contend that plaintiff "is asking the Court to let him have it both ways: (1) a nine-month tolling of the statute of limitations, because that is how long it actually took the MDOC to respond <u>and</u> (2) a finding that he did exhaust his administrative remedies per *Risher v[.] Lappin*." Doc. Ent. 48 at 2.  However,

because the Court has recommended that plaintiff's claims be clarified, the issue of tolling based upon plaintiff's engagement in the administrative grievance process is best addressed after plaintiff's claims and administrative efforts are clarified.

**3.     Plaintiff should file a more definite statement in the form of a second amended complaint.**

The district courts have a "supervisory obligation to sua sponte order repleading pursuant to Federal Rule of Civil Procedure 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates." *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006); *see also Covington v. Cole*, 528 F.2d 1365, 1373 (5th Cir. 1976) ("the court, sua sponte, might require the defendants to formulate and serve a motion for a more definite statement on petitioner under Rule 12(e), F.R.Civ.P., in an effort to ascertain the facts for use in proceedings short of trial.").

In their April 3, 2013 motion, the Corizon defendants assert, "[i]t appears that Plaintiff is attempting to assert claims that were far more than three years old on the date that he filed his [January 1, 2013] Complaint." Doc. Ent. 18 at 11. This statement is also true of plaintiff's August 29, 2013 first amended complaint (Doc. Ent. 71).

For example, plaintiff's August 29, 2013 first amended complaint alleges that plaintiff's primary care givers during 2008 and 2009 were SRF medical staff persons Malik and Buskirk. Doc. Ent. 71 ¶¶ 2, 3, 29, 30. Yet, while the first amended complaint alleges that, "[d]uring 2008 and 2009 on numerous occasions Plaintiff saw one or both Defendants Malik and Bu[s]kirk as to the severe swelling, debilitating pain, and his inability to use his right leg to be mobile[,]" and that "[d]efendants Malik and Bu[s]kirk would not recommend or provide the medical care as

13

prescribed by the[] outside specialists[,]" Doc. Ent. 71 ¶¶ 36, 39, all claims against defendants

Malik and Buskirk were dismissed on November 15, 2013 (Doc. Ent. 91).

In another example, each of the other thirteen (13) named defendants is identified as a

member of the MSAC or the MSAC member's personal representative.  *See* Doc. Ent. 71 ¶¶ 4-16.

Yet, even though the amended complaint alleges that "requests for knee replacement surgeries

were denied by the MSAC members on numerous occasions in 2009, 2010, 2011, and, on

information and belief, in 2012[,]" Doc. Ent. 71 ¶ 41, it is not clear from the face of the complaint

which denials by which defendants are the subject of plaintiff's 42 U.S.C. § 1983 claim (Doc.

Ent. 71 ¶¶ 54-57).  At this point, having the benefit of the attachments to plaintiff's May 9, 2013

response (Doc. Ent. 42), the Court can only guess that the decisions being challenged are those

dated April 29, 2009 / May 4, 2009 (Doc. Ent. 42-3 at 6), August 7, 2009 (Doc. Ent. 42-3 at 7),

September 29, 2009 (Doc. Ent. 42-3 at 8), December 15, 2009 (Doc. Ent. 42-3 at 9) and March

30, 2010 (Doc. Ent. 42-3 at 10).[7]

Thus, plaintiff should file a more definite statement in the form of a second amended

complaint against the remaining twelve (12) named defendants which clearly sets forth the dates

of the decisions being challenged.

**4.      Incidentally, plaintiff exhausted his administrative remedies with respect to MDOC Grievance Identifier RGC-12-07-1071-12z prior to filing his January 1, 2013 complaint.**

---

[7]In their May 10, 2013 reply, the Corizon defendants request that "the Court disregard Plaintiff's exhibits submitted in response to this Motion to the extent that they are not public record, because this is a Fed. R. Civ. P. 12(b)(6) motion."  The Corizon defendants "do not wish for this Motion to be converted to a Fed. R. Civ. P. 56 motion, because the Local Rules do not permit Defendants to file more than one motion for summary judgment."  *See* Doc. Ent. 43 at 4-5.

a.      In their May 10, 2013 reply, the Corizon defendants allege that "[p]laintiff failed to exhaust his administrative remedies against Defendants herein prior to filing his Complaint."  In other words, the Corizon defendants assert, "[p]laintiff filed his Complaint on January 1, 2013[,] before the *completion* of Step III of the grievance process with respect to Grievance No. RGC-12-07-1071-12Z on April 17, 2013[.]"  Doc. Ent. 43 at 2 (emphasis added).

In his May 29, 2013 sur-reply, plaintiff argues that "[t]he defense of failure to exhaust prior to filing the lawsuit has been waived by all defendants because the MDOC did not provide an answer to [Dunham's] Step-3 grievance until three months after the filing of the complaint and, therefore, made the grievance process unavailable to[] Dunham."  *See* Doc. Ent. 46 at 3-6.

b.      An inmate must "make 'affirmative efforts to comply with the administrative procedures,' and analyze[] whether those 'efforts to exhaust were sufficient under the circumstances.'"  *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier v. Lauren County, Ky.*, 636 F.3d 218, 224 (internal quotation marks and citation omitted)).  "It is well established that 'administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.'"  *Risher*, 639 F.3d at 240 (quoting *Boyd v. Corr. Corp. Of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)); *see also Peterson v. Cooper*, 463 Fed.Appx. 528, 530 (6th Cir. 2012).

The Corizon defendants point out that "[p]laintiff relies upon Grievance No. RGC-12-07-1071-12z as the grievance that tolled the statute of limitations[.]" Doc. Ent. 43 at 4.  Here, plaintiff's Step I grievance form was received on July 23, 2012, and a response would ordinarily have been due on August 13, 2012.  *See* MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective July 9, 2007, ¶ X ("The due date shall be within 15 business days after receipt of the grievance unless an extension is granted pursuant to Paragraph S.").  However, it appears that the

15

due date was changed to September 3, 2012. Thus, it appears that the August 14, 2012 Step I grievance response was timely. *See* Doc. Ent. 42-7 at 1-2.

Plaintiff's Step II grievance form was received on August 28, 2012, and a response would ordinarily have been due on September 18, 2012. *See* MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") ¶ CC ("The due date shall be within 15 business days after receipt of the grievance, unless an extension is granted as set forth in Paragraph S."). Thus, the September 6, 2012 Step II grievance response was timely. Doc. Ent. 42-7 at 3.

Finally, it appears that plaintiff's Step III appeal was received on September 19, 2012. *See* Doc. Ent. 46-1 at 1. While the grievance policy does not contain a specific deadline for a response to a Step III grievance (*see* MDOC PD 03.02.130 ¶¶ FF, GG), the grievance policy does provide that "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II. An extension for a Step I or Step II response shall not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division." MDOC PD 03.02.130 ¶ S. Thus, the March 2013 Step III grievance response - dated approximately six (6) months after the MDOC received plaintiff's Step III appeal - was not timely. *See* Doc. Ent. Doc. Ent. 46-1 at 2.

**c.**     However, the MDOC having failed to timely respond to plaintiff's September 19, 2012 Step III appeal, the Court should not grant the Corizon defendants' April 3, 2013 motion to dismiss (Doc. Ent. 18) on the basis that Dunham "failed to exhaust his administrative remedies against Defendants herein prior to filing his [January 1, 2013] Complaint." Doc. Ent. 43 at 2; *see also* Doc. Ent. 43 at 4. This is so, because 120 calendar days from July 23, 2012 is November 20,

2012.  And, even if the Step I and Step II respondents had each been given a fifteen (15) day extension, then 150 calendar days from July 23, 2012 is December 20, 2012.

Thus, even if "[p]laintiff filed his [January 1, 2013] Complaint before the *completion* of Step III of the MDOC grievance process[,]" Doc. Ent. 43 at 4 (emphasis added), in this case plaintiff exhausted his administrative remedies with respect to MDOC Grievance Identifier RGC-12-07-1071-12z prior to filing his January 1, 2013 complaint.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

17

s/Paul J. Komives

PAUL J. KOMIVES

Dated: December 10, 2013

UNITED STATES MAGISTRATE JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 10, 2013.

s/ Kay Doaks

Case Manager